IN THE FEDERAL DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| MICHAEL CHAPMAN )<br>9761 Mount Tabor Road )<br>Odessa, Missouri 64076 )<br>)<br>Plaintiff, )<br>v. )<br>)<br>)<br>ORBITAL ATK, d/b/a ALLIANT )<br>TECHSYSTEMS a/k/a LAKE CITY )<br>ARMY AMMUNITION PLANT )<br>)<br>Serve: )<br>CT CORPORATION SYSTEM )<br>120 South Central Avenue )<br>Clayton, Missouri 63105 )<br>)<br>)<br>Defendant. ) | Case No.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR DAMAGES

### I. Preliminary Statement

1. COMES NOW, Plaintiff, Michael Chapman, by and through his attorneys of record, Kevin Baldwin and Eric Vernon of Baldwin & Vernon, and brings this cause of action against Defendant, Orbital ATK, d/b/a Alliant Techsystems, a/k/a Lake City Army Ammunition Plant, hereinafter collectively referred to as "Defendant." This action seeks declaratory, injunctive and equitable relief, compensatory and punitive damages, and costs and attorneys' fees for Defendant's conduct and actions taken against Plaintiff in violation of the American's with Disabilities Act As Amended in 2008 as well as the Age Discrimination in Employment Act.

### II. Jurisdiction & Venue

2. This action arises under the Americans with Disabilities Act of 1990

("ADA"), as amended by the ADA Amendment Act of 2008 **("ADAAA"),** 42 USCA §12101 et. seq., and the Age Discrimination in Employment Act ("**ADEA**") 29 U.S.C. §621. Jurisdiction of Plaintiff's state law claims arises pursuant to 28 U.S.C. §1367.

3. Jurisdiction is invoked pursuant to 42 U.S.C. 12188, 42 U.S.C. 2000a-3(a), and 42 U.S.C. 2000a-6(a); 28 U.S.C. 1331, 42 USC' 2000e- 5 (f); and 213.010 *et seq.* R.S.MO. Plaintiff timely filed his complaint of discrimination with the EEOC and Missouri Commission on Human Rights and a right - to- sue letter was issued by the Equal Employment Opportunity Commission (EEOC) on January 17, 2017. The Right to Sue Letter, with attached Charge of Discrimination, is attached hereto as Exhibit 1 and is hereby fully incorporated as if set forth herein.

4. Jurisdiction is proper for all state claims as the cause of action complained of accrued in Jackson County Missouri.

5. Declaratory, injunctive, and equitable relief is sought pursuant to 28 USC § 2201, 2202, 42 USC § 1981a; and 213.010 et seq. R.S.MO.

6. The ADAAA prohibits employers from "discriminat[ing] against a qualified individual with a disability," 42 U.S.C. § 12112(a), and requires employers to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified [employee] with a disability," *id §* 12112(b)(5)(A).

7. The ADEA prohibits age discrimination in employment for those who are 40 years of age or more. 29 U.S.C. §621

8. Sections 2000e-3(a) of Title VII, 623(d) of the ADEA, and 12203 of the ADA make it unlawful for an employer to retaliate against an employee because he has participated in any investigation or proceeding under the Acts or because he has opposed the employer's discriminatory practices. As with other anti-retaliation provisions, Congress included these sections in their respective Acts in order to enable employees to engage in statutorily protected activities without fear of retaliation by their employers.

9. Costs and attorneys' fees may be awarded pursuant to 42 USC § 2000e-5(k); 213.010 et seq., R.S.Mo., and Fed R Civ P 54.

10. This action properly lies in the Western District of Missouri, pursuant to 29 USC § 1391(b), because the claim arose in this judicial district, and pursuant to 42 USC § 2000e-5(f)(3) because the unlawful employment practices were committed in this judicial district.

### III. Parties

11. Plaintiff Michael Chapman resides at 9761 Mount Tabor Road Odessa, MO 64076. Plaintiff was born on August 5, 1985.

12. Defendant Orbital ATK, d/b/a Alliant Techsystems, a/k/a Lake City Army Ammunition Plant (hereinafter "ORBITAL ATK") is a federal enclave whose place of operation is 78 Highway, Independence, MO 64504, and, upon information and belief, at all times relevant, employed more than 50 regular employees.

13. Prior to filing this Petition for Damages, Plaintiff sought administrative relief through the Equal Employment Opportunity Commission, the Department of Justice and the Missouri Commission on Human Rights to no avail. All jurisdictional and administrative requirements have been met by Plaintiff.

### IV. Facts Common to All Counts

14. Plaintiff hereby incorporates as if fully set forth herein paragraphs 1-12. Plaintiff Michael Chapman, is a 47-year-old male, who worked for nearly nine years at Orbital ATK.

15. Plaintiff worked his way up to a tool setter machinist after his 3 month probation period making $22.49 an hr.

16. Plaintiff had surgery on his left knee in October of 2013 and was on medical leave for

4 months.

17. When he returned to work they had given his job to someone else and demoted Plaintiff back to packing making $18.50 an hr -- a $4.00 an hour pay cut.

18. Plaintiff felt like he was being punished for being on medical leave because they did not do this to everyone.

19. Plaintiff was a good employee with no attendance or attitude problems and had a clean work history jacket with ATK.

20. On April 30, 2015, Plaintiff was working on the assembly line in packing which is the hardest jobs and working conditions at ATK and is where they start all the new hires and temps.

21. There are very repetitive and strenuous jobs and the only one that requires you to do stretching exercises before you start working your shift and stretch again after lunch. This is the only job at bldg 3 that requires the stretching exercises. There are a lot of injuries in this department.

22. Plaintiff was stretching the ammo belt of 7.62mm live and fully loaded rounds which weighs approx 25 to 30 lbs to put it on the hooks on the assembly line. However, by the end of the day and with the repetitive motions and load bearing on his arms, these belts get very hard to stretch.

23. While stretching the belt to hook, Plaintiff felt his shoulder pop and immediately felt the pain. Plaintiff told his Supervisor Jason Miley and he took Plaintiff to his office and filled out an accident report. He then took Plaintiff to our Fire Dept. to be checked out.

24. The fire dept said Plaintiff needed to go to the emergency room to have further evaluation because of the pain he was experiencing and the swelling that was occurring.

25. Plaintiff drove himself to St. Mary's hospital in Blue Springs Mo. to the ER. They did

X-rays of his right shoulder and prescribed him pain medication for the pain and put his arm in a sling.

26. ATK had someone come in to give Plaintiff a drug test which was negative. The ER told Plaintiff to follow up with the medical Dr. at ATK the next day.

27. Plaintiff was seen by Dr. Leigh Marvin on 5/1/2015, she scheduled an MRI for Plaintiff at Independence Diagnostic Imaging for 5/11/2015. Dr. Marvin said Plaintiff was able to return to work on full duty on 5/21/2015.

28. Based upon that determination, Plaintiff's Workman's Comp case was closed on 5/22/2015. Plaintiff did not feel he was able to return to work so Dr. Marvin said he needed to see his primary care physician, Dr. Richard Haile, if Plaintiff thought he wasn't ready to return to full duty because of his pain and loss of range of motion in his right shoulder.

29. Plaintiff saw Dr. Haile on or about May 25, 2015, and prescribed physical therapy on Plaintiff's right shoulder and he was prescribed muscle relaxers and 7.5/325 hydrocodone for the pain in his right shoulder.

30. ATK was pressuring Plaintiff to come back to work so Dr. Haile said only on light duty and no lifting over 10 lbs.

31. Plaintiff submitted his work restrictions note from Dr. Haile to Dr. Marvin at ATK and there was a meeting arranged on approx 5/27/2015. At this meeting there was Georgia Lee, the head of HR and Susan Grahm, General manager of Bldg 3 and Dr. Leigh Marvin. **They determined that they could not accommodate Plaintiff's work restrictions** with the medications he was on and weight limitations.

32. Plaintiff was then put on my STD which is through Sedgewick on or about 5/23/2015.

33. Plaintiff then suffered from a heart attack on 7/16/2015 and had 2 stints put in on

7/17/2015 and did 3 months of cardiology rehab.

34. Plaintiff was also having knee pain in both knees from a previous work related injury.

35. Plaintiff saw Dr. Robert Paul an orthopedic surgeon who indicated Plaintiff needed both knees replaced. Plaintiff had a note from Dr. Paul dated 10/22/2015 keeping him off work till further notice.

36. Plaintiff called the employee solutions hotline to tell them about issues he was having with their insurance carrier. He tried to communicate with ATK but they would not communicate with him.

37. After calling the hot line, Plaintiff received a phone call from someone and they left a message but did not leave their name but said they did not appreciate Plaintiff calling the hotline.

38. A few hours later, Georgia Lee called Plaintiff and told him not to call the hotline that they would get back to Plaintiff when they could.

39. Plaintiff was in a panic, he couldn't work and needed to find out about his insurance that he had paid for so he could be paid while on medical leave.

40. Georgia Lee said she had nothing to do with that Plaintiff would have to call Sedgewick with that problem it was their decision not hers. Plaintiff was then passed off to Cigna insurance for LTD for which he had paid and they said they would look into it.

41. Plaintiff received a letter on 12/2/2015 from Cigna and they said his claim was denied for LTD for lack of medical evidence. Plaintiff called HR again on 12/2/2015 and again had to leave messages with Georgia Lee and Laura Griffith and again no one would return his calls so he called employee solutions again.

42. Laura Griffith called him back the next day but still could not answer his questions about his employment or medical insurance and told him to call Cigna.

43. Plaintiff was then sent a letter from Allsup, a company that works for Cigna, that said **he needed to apply for total disability and they would help him with the paperwork and would not charge him a fee.** (I only found out later, after speaking with an attorney, that this is a common ruse used by the companies because they have you say that you can never and will never be able to work again which allows the company to fire you and lets the long term disability company not pay you!)

44. Plaintiff was told by HR to communicate with Cigna they were handling everything.

45. Plaintiff still was not receiving any pay and had not had a check since 10/23/2015.

46. Plaintiff could not be released to have his knee replacements until he was cleared by Dr. Marco Mazella, his Cardiologist because of the blood thinners he was taking.

47. Plaintiff was denied LTD from Cigna because they said he didn't have enough evidence to support his case, but yet they thought I had enough evidence for disability.

48. On or about 2/16/2016 Dr. Mazella cleared Plaintiff to have his knee replacement. The surgery was 3/14/2016. Plaintiff was supposed to have his left knee replaced 6 weeks after his right knee.

49. While Plaintiff was still in the hospital recuperating from his knee replacement, he received a certified letter from ATK that he had been terminated on 3/10/2016 for failure to comply with leave of absence or disability procedures.

50. Plaintiff believes there is no reason for him not to be working or employed by Defendant as he did comply with their policies but their own system failed him and others like him.

51. Based upon belief, Plaintiff checked the employee solutions website when he signed up for benefits and it states that if he had a disability and it is a federal facility they have to find a reasonable position for him.

52. Plaintiff lost significant wages and pay.

53. Plaintiff has experienced, is now experiencing, and will continue to experience into the indefinite future, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses as a direct result of Defendant's conduct.

54. Plaintiff has suffered and will continue to suffer future pecuniary losses as a direct result of Defendant's conduct.

55. Defendant ORBITAL ATK and its managers actively engaged in discrimination against Plaintiff with malice or in reckless indifference to his rights under the Americans with Disabilities Act of 1990 ("ADA"), as amended by the ADA Amendment Act of 2008 **("ADAAA"),** 42 USCA §12101 et. seq.

56. Plaintiff is an individual with an actual and/or perceived disability under the ADAAA, but is and was an individual who could perform the essential functions of his job and may seek reasonable accommodation under the law.

57. Defendant ORBITAL ATK and its managers actively engaged in discrimination against Plaintiff with malice or in reckless indifference to his rights under the ADEA, which prohibits age discrimination in employment for those who are 40 years of age or more. 29 U.S.C. §621

58. The Defendant further engaged in retaliation against Defendant after he repeatedly called to complain on the employee assistance hotline with regard to what he believed was discriminatory treatment based upon his actual/perceived disability.

**V. Causes of Action**

**COUNT I**
**DISABILITY DISCRIMINATION BY DEFENDANT ORBITAL ATK UNDER THE ADAAA FOR FAILURE TO ACCOMODATE**

59. Plaintiff hereby incorporates and re-alleges all previously alleged Paragraphs as if

fully set forth herein.

60. Plaintiff has been diagnosed with medial maladies including joint replacement and/or heart disease and is therefore considered a member of the protected category under the Americans with Disabilities Act As Amended.

61. Plaintiff was qualified and capable of performing the essential functions of the position and/or would have been if reasonable accommodations had been made for him.

62. Defendant's actions, as noted above, were discriminatory, continuous, arbitrary and capricious and constituted a disparity in treatment toward Plaintiff as compared to similarly situated individuals who were not disabled and, as such, Defendants' actions were unlawful employment practices in violation of Americans with Disabilities Act As Amended.

63. Plaintiff's disabilities was a motivating factor in the decision to treat him disparately as compared to similarly situated non-disabled employees.

64. Management level employees knew or should have known of the discrimination based upon his disability but failed to address the problem by failing to reasonably accommodate Plaintiff's request for accommodation.

65. At the time these actions were taken by Defendant, Defendant and its management knew that their actions were unlawful.

66. The actions and conduct set forth herein were outrageous and showed an evil motive and/or reckless indifference or conscious disregard for the right of Plaintiff, and therefore Plaintiff is entitled to punitive damages from Defendant to punish Defendant and to deter Defendant and others from like conduct.

67. Plaintiff has been damaged by Defendants' unlawful employment actions.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count I of

hhisComplaint, for a finding that he has been subjected to unlawful discrimination prohibited by 42 U.S.C. § 12101, *et seq.;* for an award of compensatory and punitive damages; for his costs expended; for his reasonable attorneys' fees; and for such other relief as this Court deems just and proper.

## COUNT II
## PERCEIVED DISABILITY DISCRIMINATION BY DEFENDANT ORBITAL ATK

68. Plaintiff hereby incorporates and re-alleges all previously alleged Paragraphs as if fully set forth herein.

69. Defendants' perceived Plaintiff as being disabled due to his limitations and need for surgery, need for medical treatment, and for his request for accommodations (work restrictions).

70. By treating him disparately as compared to other similarly situated employees who had not experienced a medical malady but were still unable to fulfill their duties yet allowed to continue unabated in their employment, Defendant ORBITAL ATK by and through its managers and/or executives engaged in actions prohibited by the ADAAA.

71. The conduct and actions of the above-described perpetrators as discussed herein was conducted on the basis of perceiving the Plaintiff to have a disability and refusing to accommodate him, which constituted discrimination based on such disability.

72. Defendant ORBITAL ATK's perception of Plaintiff as disabled was a motivating factor in the decision to no allow him to work.

73. Plaintiff suffered a tangible job detriment as a result of Defendant's discriminatory treatment.

74. Management level employees knew or should have known of the discrimination based on the perceived disability, but failed to address the problem, and further failed to reasonably

accommodate Plaintiff's disability to allow him to return to employment.

75. The actions and conduct set forth herein were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff, and therefore Plaintiff is entitled to punitive damages from Defendants, to punish Defendants and to deter Defendants and others from like conduct.

76. Plaintiff's disability was a motivating factor in Defendant ORBITAL ATK's decision to treat him disparately as compared to other similarly situated employees and to refuse to accommodate him which led to her being off of work and losing her pay, vacation and other acquired benefits for a significant period of time.

77. Plaintiff has been damaged by Defendants' unlawful employment actions.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count II of his Complaint, for a finding that he has been subjected to unlawful discrimination prohibited by 42 U.S.C. § 12101, *et seq.;* for an award of compensatory and punitive damages; for his costs expended; for his reasonable attorneys' fees; and for such other relief as this Court deems just and proper.

## COUNT III
## RETALITION BY DEFENDANT ORBITAL ATK

78. Plaintiff hereby incorporates and re-alleges all previously alleged Paragraphs as if fully set forth herein.

79. Plaintiff was engaged in a protected activity under the law of complaining about what he believed to be discrimination when he contacted the company hotline with regard to his treatment and with questions regarding his job status while seeking short term and long term disability payments as directed by Defendant's policies.

80. After Plaintiff voiced his concerns, Defendant Orbital ATK would not answer his phone calls nor returned them.

81. Defendant ORBITAL ATK by and through its managers and/or executives engaged in actions prohibited by the ADAAA and/or the ADEA.

82. The conduct and actions of the above-described perpetrators as discussed herein was conducted on the basis of Plaintiff's objections to what he believed was discriminatory treatment by the Defendant ORBITAL ATK in refusing to accommodate him.

83. Plaintiff suffered a tangible job detriment as a result of Defendant's retaliatory treatment.

84. Management level employees knew or should have known of the retaliation, but failed to address the problem, and further failed to reasonably accommodate Plaintiff's disability to allow him to return to employment.

85. The actions and conduct set forth herein were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff, and therefore Plaintiff is entitled to punitive damages from Defendants, to punish Defendants and to deter Defendants and others from like conduct.

86. Plaintiff's engaging in a protected activity of complaining of what he believed to be a discriminatory action was a motivating factor in Defendant ORBITAL ATK's decision to treat him disparately as compared to other similarly situated employees and to refuse to accommodate him.

87. Plaintiff has been damaged by Defendants' unlawful employment actions.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count III of his Complaint, for a finding that he has been subjected to unlawful discrimination prohibited by 42 U.S.C. § 12101, *et seq.;* for an award of compensatory and punitive damages; for his costs expended; for his reasonable attorneys' fees; and for such other relief as this Court deems just and proper.

# COUNT IV
## AGE DISCRIMINATION BY ALL DEFENDANTS JOINTLY AND SEVERALLY

88. Plaintiff hereby incorporates and re-alleges all previously alleged Paragraphs as if fully set forth herein.

89. Plaintiff is over the age of 40, and is therefore considered a member of the protected category under the Age Discrimination in Employment Act, 29 USC ' 621 *et seq*.

90. Defendants' actions, as noted above, constituted discrimination against the Plaintiff in violation of the ADEA.

91. Defendants' actions, as noted above, were continuous, arbitrary and capricious and were unlawful employment practices in violation of the ADEA.

92. Based upon the foregoing, Plaintiff's age was a motivating in Defendants' decision to not accommodate Plaintiff.

93. At the time these actions were taken by Defendants, Defendants knew these actions were unlawful.

94. Defendants' actions were outrageous because of their evil motive or reckless indifference to the rights of the Plaintiff when they engaged in acts of discrimination against the Plaintiff that culminated in her disparate treatment and/or her termination from employment.

95. Plaintiff has been damaged by Defendants' unlawful employment actions in violation of the ADEA.

WHEREFORE, Plaintiff prays for judgment against Defendant on Count IV of his Complaint, for a finding that he has been subjected to unlawful discrimination prohibited by the Age Discrimination in Employment Act, 29 USC ' 621 *et seq.;* for an award of compensatory and punitive damages; for his costs expended; for his reasonable attorneys' fees; and for such other relief as this Court deems just and proper.

**VI. Prayer for Relief**

Wherefore, Plaintiff prays that this Court:

a) declare the conduct engaged in by Defendant to be in violation of Plaintiff's rights;

b) enjoin Defendant ORBITAL ATK and its managers/supervisors from engaging in such conduct;

c) restore Plaintiff to his position with Defendant company;

d) restore Plaintiff's lost vacation time and sick time;

e) award Plaintiff equitable relief of back salary and fringe benefits up to the date of reinstatement and prejudgment interest for that entire period and benefits accrual;

f) award Plaintiff compensatory, punitive and liquidated damages against Defendant;

g) award Plaintiff damages for emotional pain and suffering;

h) award Plaintiff his costs and attorneys' fees; and

i) grant such other relief as it may deem just and proper.

**DEMAND FOR A JURY TRIAL**

Plaintiff demands trial by jury on all issues triable by a jury in this complaint.

Respectfully submitted,

By : /s/ Kevin Baldwin
Kevin Baldwin #49101

/s/ Eric Vernon
Eric Vernon, #47007
11 E. Kansas Street
Liberty, MO 64068
Tel: (816) 842-1102
Fax (816) 842-1104
Kevin@bvalaw.net
Eric@bvalaw.net

**ATTORNEYS FOR PLAINTIFF**